[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff in the above entitled action has brought a motion for modification of custody, related financial orders, return of property, motion to modify visitation and related motions addressed to the combined hostility among the parties, all post judgment to the parties' divorce in 1994.
The clear import of the two and a half days of testimony is a picture of continuing acrimony and marital distrust continuing for four and one-half years after the separation and divorce of the parties. Much of the problem appeared to revolve about the plaintiff being closely scrutinized as to her comings and goings and particularly the nature of her relationships with other men after the dissolution of the marriage. The defendant was of the opinion that the plaintiff misinterpreted his concerns for his children with a preoccupation of her activities.
After a full review of the evidence the court is of the opinion that the following orders should issue.
The custody of the minor children should remain joint custody with physical residence with the plaintiff mother, with father having the final say in emergency medical treatment and procedure.
The court, after having reviewed all the evidence, finds the parties initially contemplatedjoint parenting. However, contrary to the expectations and intentions of the parties, and because of the defendant's relocation to New Haven in July of 1994 for work related reasons, there was a failure on the part of the defendant to comply with the joint parenting obligations. Based on this finding, the plaintiff is deemed to be the primary CT Page 6398 physical custodian and the court will recalculate the guideline support that she would be then entitled to.
Support payments are therefore recalculated as follows:
From the date of filing of the plaintiffs motion, November 17, 1995 to the present, the court finds the following periods: November 17, 1995 to January 22, 1996, ten weeks at $26.35 per week or $263.50; January 22, 1996 to December 31, 1996, forty-nine weeks at $28.44 per week or $1393.56; January 1, 1997 to December 31, 1997, fifty-two weeks at $25.38 or $1220.28; January 1, 1998 to June 30, 1998, twenty-six weeks at $17 per week or $442; July 1, 1998 to December 31, 1998, twenty-six weeks at $2.04 per week or $53.04; January 1, 1999 to April 23, 1999, sixteen weeks at $2.04 or $32.64, for a total amount of $3305.02 as an arrearage. Child support for the period commencing April 26, 1999, is ordered at the rate of $157 per week with an additional $30 per week on the arrearage of $3305.02. The defendant will pay $78.50 per week for the two week period of summer vacation plus $30 on the arrearage.
The parties shall share equally any unreinbursed medical, optical, orthodontic, dental, orthopedic, psychological, psychiatric, pharmaceutical or other medical/hospital expenses not covered by insurance.
The defendant is ordered to pay the plaintiff $418.39 as his share of the unreimbursed expenses through October 1, 1998. Said payment to be made within thirty days of this decree modification
The defendant shall have one of the minor children as exemption for purposes of Federal Tax obligation Upon the oldest child failing to qualify as a dependent, the parties shall alternate the Federal Tax exemption for the younger child.
The parties are to exercise specific visitation in accordance with the following schedule of visitation.
September through June:
a. In a four-week rotation, weeks one and three, defendant to have visitation from Friday 7:30 p. m. to Sunday 7:30 p. m. On Week two, the children remain with plaintiff. On week four, defendant to have visitation from Saturday 7:30 p. m. to Sunday 7:30 p. m. CT Page 6399
b. Defendant may take the children to dinner on Tuesdays 5:30 p. m. to 7:30 p. m.
c. School vacation weeks to be shared equally between plaintiff and defendant with the parties alternating Christmas vacation, February vacation and Spring vacation with the defendant having the children for said Christmas and Spring vacation periods in the even years and plaintiff having the children for said Christmas and Spring vacation periods in the odd years. Defendant will have February vacation in odd years; plaintiff in even years.
d. Holidays to be shared between the parents, and more specifically:
 (1) Defendant to have Christmas Eve from 5:00 p. m. through Christmas Day at 5:00 p. m.; Easter Eve from 5:00 p. m. through Easter Day at 5:00 p. m.; defendant to have July 4thvery year from 7:00 p. m. the day before July 4th to 10:00 p. m. on July 4th
 (2) Plaintiff to have New Years holiday from 5:00 p. m. New Years Eve to 5:00 p. m. New Years Day; Memorial Day; and Presidents Day.
 (3) Thanksgiving shall alternate with plaintiff having access in even-numbered years. During defendant's odd-numbered year Thanksgiving access, such access shall be from 10:00 a.m. to 7:00 p. m.
 (4) Defendant shall have Labor Day 10:00 a.m. to 7:00 p. m. in even years; and Martin Luther King Day 10:00 a.m. to 7:00 p. m. in even years; Veterans Day 10:00 to 7:00 p. m. in even years; Columbus Day 10:00 a.m. to 7:00 p. m. in odd years.
July and August
a. Due to the school year commencing in August, and calendar shifts, the months of July and August typically have seven (7) full calendar weeks available as vacation weeks; for example, Sunday, July 4, 1999 through Saturday, August 21, 1999 is seven (7) calendar weeks.
b. For all references in this order, vacation weeks are defined as from Monday 9:00 a.m. to Friday 9:00 p. m. and the CT Page 6400 order of rotation weekends shall not change.
c. Each summer, defendant shall have the three (3) weeks summer visitation, and those three weeks shall be non-consecutive weeks unless otherwise agreed. The parties shall alternate first choice of vacation week choice by May 1st of each year.
d. If two (2) of the defendant's summer weeks are consecutive, then during defendant's summer access, plaintiff shall have visitation on the middle weekend from Friday 6:00 p. m. to Sunday 6:00 p. m.
e. During all other summer weeks, the parties shall alternate weekends Friday 7:30 p. m. to Sunday 7:30 p. m. on a two (2) week cycle through the summer weeks. Such alternating weekends shall not cause a shortchange during transition from school to summer week rotation or from summer to school.
f. Defendant's Tuesday evening access referenced above shall remain in effect through summer weeks, except during plaintiffs vacation weeks.
Transportation
Within Canterbury, the parents shall share transportation. Outside of Canterbury, the parent exercising visitation shall provide transportation.
However, in light of the fact that in the plaintiffs religious beliefs birthdays are not celebrated defendant will have visitation with minor children on their specific birthdays from 5:00 p. m. to 9:00 p. m.
The defendant is further ordered to replace the savings bonds which were unilaterally cashed in violation of a court order restraining unilateral sale of the savings bonds, which order issued on March 23, 1992.
Although the court is in agreement with defendant that he may not be held in contempt now due to the intervening final judgment of May 10, 1994, the court has the equitable power to enforce the judgment where the savings bonds were to be used for purposes of the children's education. (Paragraph 9 of the Agreement for Judgment) Accordingly, the court orders the defendant to replace all the missing savings bond within the next three years so that CT Page 6401 the original number of 168 $100 face value bonds are available for the children's education. See Roberts v. Roberts, 32 App. 465, 472.
The parties are further ordered to make no disparaging remarks about each other in the presence of the children.
The court is concerned about the potential conflict concerning the religious upbringing of the children. Under the joint custody arrangement, the parties are required to consult with each other concerning the religious upbringing. At the time of the original judgment both parties were Roman Catholic and there was no contemplation of the children participating in any other religious upbringing. Accordingly, the court directs that the children continue to be brought up in the tradition both parties shared at the time of dissolution. This order is in no way to be construed as prohibiting attendance at any other religious studies or activities should the parties agree thereto and the children agree to attend voluntarily. The court does however, order that on days when the plaintiff has primary weekend visitation and defendant takes the children to Sunday church services, those services be between the hours of 7:00 a.m. and 12:00 p. m. to allow plaintiff the balance of the day for visitation with her children.
Addressing the defendant's motion for contempt, the court, after considering all of the evidence finds that the shed in question was not intended by the plaintiff to be a permanent structure, was put temporarily on the premises on cinder blocks with the intention that it could be moved. Plaintiff contributed all of the expense relative to its construction and defendant did not contribute any sums toward its purchase or construction.
Furthermore, although there was evidence of the value of the shed, there was no evidence of the value of the real estate with the placement of the shed and the real estate value after removal which would be the appropriate measure of damages.
Accordingly, the defendant's motion for contempt is denied.
Kocay, J.